Is that how you pronounce it? Is that how you pronounce it? Hammervold? Yes, Your Honor. Didn't the Justice Court say you couldn't represent yourself, or does that not carry over here? Your Honor, I am admitted to practice in the Fifth Circuit. There's been no challenge to my representation of myself in this case. In the appeal? Correct, Your Honor. May it please the Court. The nexus question in this appeal, across all substantive issues, is what specific conduct by me forms the basis of plaintiff's claims against me? The answer is, I was sued because I made the decision to represent nine individuals against the plaintiffs. The most important point that I want to emphasize today is that every specific act by me attributed to me in the plaintiff's complaint involves my representation of a client as a lawyer pursuing relief in litigation. The argument is that there is a conspiracy far in advance of any specific potential clients that were the matter to work out in the way that the conspiracy projected you would then get clients. If that is the allegation, how does anti-SLAPP apply to that? What case law do you say is something that far in advance of an actual judicial proceeding, which is the only part of the statute I see you relying on, that that qualifies? Well, Your Honor, with respect to the scope of the TCPA, the question is what is the conduct that forms the basis of the claim? Now, the claim is for conspiracy, and conspiracy is a cause of action. And as the Texas court recognized in – sorry. As the courts have recognized, whether the specific conduct actually constitutes a conspiracy or constitutes participation in a conspiracy goes to the merits of the action, goes to step two of the analysis and doesn't factor in step one of the analysis. There have been many cases where there was an alleged conspiracy, and whether acts by an attorney constituted a conspiracy that courts have determined was within the scope of the TCPA. The problem is there's a conspiracy involving actual litigation. My only point is you are relying on judicial proceeding. The case laws I see, including the cases that you rely on that you say support you, all seem to be dealing with either an actual proceeding that's underway, a plaintiff and a defendant, papers filed in a court, or maybe it's digits filed in a court, or right on the cusp of that. The allegation here is that there was the prospect, and should these plaintiffs come forward, you would have this role after Manukian did his part. So if that's the allegation, what case describes the Texas statute in a way that would cover that? Well, Your Honor, one of the cases that I think is important is the Beaumont v. Walker case, and also in that case there was a global conspiracy involving numerous defendants, and one of the set of defendants was an attorney who was representing a labor union. And the plaintiff in that case was an electrician who claimed that his professional reputation had been tarnished and various actions had been taken against him. And the court said with respect to the attorney who represented the local labor union, the only acts here that evidenced his participation in a conspiracy were that he attended a criminal trial of the plaintiff and that he represented the labor union, and these acts relate to the exercise of the right to petition. And therefore, under the act, it's subject to the TCPA, and the defendant has the burden to show the merit of the claims. And another aspect of the statute that I want to focus this Court's attention to is the phrase in the statute that defines the scope of the TCPA, and it says it applies to any legal action that is based on, related to, or in response to an exercise of a protected right. And this Court is bound to interpret this statute as it believes the Texas Supreme Court would. And the Texas Supreme Court recently, in February 2017, determined that courts have to apply the literal language of the statute, even though the terms in the statute are unqualified, they're broad, and they have a propensity to make this statute go much broader than the core considerations of constitutional activity that courts would normally consider protected under jurisprudence. But wouldn't it have to apply to an existing piece of litigation or a petition or a complaint, not just a threat or an attempt to extort some party by threatening to sue them? No, Your Honor, it doesn't. The statute actually specifically defines the right to petition, and there are about five subsections of activities that are considered rights of petition. The very first one is any statement that pertains to a judicial proceeding. You only relied on one, correct? That is correct, Your Honor. That's subsection A, pertains to a litigation. I'm not sure of your answer to Judge Clement. The position of the district court, as I read your motion to dismiss papers, is that you are only relying on judicial proceeding. That is still your position, is it not? You're not trying to go beyond that. Judicial proceeding is the only part of this statute that you cited in the district court, gave a case, you said this is a judicial proceeding, and I don't see that you relied and can so we'd have to deal with whether you could expand your argument in the district court. So I'm just trying to make sure when you said to Judge Clement that you are saying what we need to resolve here is whether this is a judicial proceeding that is the focus of the case. The question is whether there is some communication by me that relates, that pertains to a judicial proceeding that forms the basis of their claims against me. I take that to be a yes, even if you're not quite sure what my question was. But the only thing we're looking at is judicial proceeding, correct? That's the only category under subpart 4 of 27.001. Yes, Your Honor. All right. And in the Quintanilla case, the case that I brought to the Court's attention in a Rule 28J letter, the Texas Court of Appeals directly held that the communication doesn't have to be in the context of a filed judicial proceeding, that it can occur whenever a judicial proceeding is imminent or considered to be imminent. And here the specific acts pled are that I accepted representation of a client to file a judicial proceeding and that I communicated the fact of my representation of a client through a pre-suit notice letter that was required by Texas statute as a precondition of filing the claim. And paragraph 97 of the complaint specifically alleges that my role in the conspiracy is prosecuting claims in litigation. Well, the district judge said that what this case is really about and why it's not the anti-slap statute is that the agreement predates all that. The agreement is that you will stand by and be ready to do this when the occasion arises. I'm not saying it's truthful. You're standing here and no doubt will deny most of that, but all I'm saying is based on these allegations. Yes, ultimately specific cases exist, future specific cases would exist if the understanding of the conspiracy is correct, but the district judge says that the gravamon of this case is the agreement, not the actual bringing of the litigation. And that's correct, Your Honor. An agreement is going to be a necessary element of any conspiracy. But the question is at what point did this occur? And I would suggest to the Court an analytic exercise. If you removed the acceptance of the attorney-client relationships, if you removed the notices, if you removed the filing of the suits, what's left? Just this conclusory allegation of an agreement that's not identified at any point in time. And finally, even if— Let me ask you about that. What would you have the plaintiff do if he doesn't have your cell phone records, if he wasn't privy to a conversation that may or may not have happened, but is it a plausible allegation? How could he do otherwise than say here is the effect of that agreement? Respectfully, Your Honor, the plaintiffs could not plead outside the statute. And that's the point. This statute exists to target this type of case regardless of how the pleading happens. Now, there's an important element is that it's not that they can't proceed with these types of lawsuits. They just have to satisfy their burden under Step 2 of the inquiry. And under Step 2 of the inquiry, they don't have that difficult of a standard. They can rely on pleadings, but they have to show element by element what the information is that supports these claims. And they did not do that. They did not attempt to satisfy their Step 2 burden in this case. And what they've said in their appellee brief is that we didn't do this, but we attached 600 pages to the complaint, and look how detailed the complaint is. The court can satisfy itself. And in the Texas Court of Appeals' decision in the Cabin case, the Texas Court of Appeals directly held that that's not sufficient to satisfy the Step 2 burden, that you have to go element by element and show what the specific information was. And in that case, that plaintiff had attached 200 pages of exhibits to the complaint, and the court actually observed that they might have been able to satisfy their burden with what they had had they attempted to do it. Finally, there's essentially a Step 3 under the TCPA where when the defendant presents a prima facie support that an affirmative defense applies, the plaintiff then has the burden to rebut that affirmative defense. And here, Texas attorney immunity applies because every act attributed to me, every specific act, is within the scope of my representation of a client. The initial acceptance of a client, sending pre-suit notice, and filing suit. Those are all the specific acts that are attributed to me which reflect the conspiracy. And as this court determined in the choice case, which was written by Judge Clement, the inquiry is only whether the specific acts relate to the office of the attorney, within the scope of the attorney's representation. And here, that's easily satisfied on the face of the complaint. And also, the choice case involved a conspiracy allegation. There was an allegation that the attorney conspired to participate and advance a Ponzi scheme, and a fraudulent scheme. But the court looked at what was done to advance the scheme and what evidenced the conspiracy and determined that the types of filings and representations that were made were all within the scope of representing the client and could not form the basis of a claim under Texas law. Now, the two arguments that... Are you taking the position here that your situation in this case is the same as that Ponzi scheme? Well, Your Honor, I would say that the situation here is significantly less well-plaid in terms of trying to connect me to some type of illegal activity. In that case, I would submit it as an even stronger indication of where you might be able to link an attorney, despite the fact that the attorney's conduct was within the station of being a lawyer, to some type of criminal activity. Are there any criminal charges pending in this case? No, there are not, Your Honor. What about conversations with the FBI? Was that just an allegation, or did that happen? Not as far as I know, Your Honor. Okay. With respect to the RICO issue, the parties agree that this court's jurisdiction turns on whether the RICO issue is inextricably intertwined with the TCPA issue. And as a practical matter, what this means, or one element of what this can mean, is this court has the ability, has the discretion, to determine that it's appropriate to review the case if there are overlapping issues of fact and law. And respectfully, I would submit to this court that this court should exercise this jurisdiction here, and this court should recognize that there are overlapping issues of fact and law because the nexus question in both issues is the same. The issue is, all of the allegations against me are based on my litigation activity and my representation of a client. And the primary work for this court regarding both issues is parsing the plaintiff's allegations to see that the only way that the plaintiff supports their allegations or details what specific involvement I had is based on an allegation of my representing a client or deciding to represent a client. And the legal issues, while they do have some doctrinal differences, the focus of the issues before the court are not on those differences but on the application of the same principles to advance the same underlying policies. And finally, the interest of judicial economy, which underlines this doctrine, suggests that it is appropriate for this court to review this issue at this time because if this court addresses this issue, it can dispose of the entire case and prevent the need for the case to go back to trial, back to discovery, and potentially back again to this court for another appeal. On the RICO issue, again, the key issue is that every specific act attributed to me involves my representation of the client. And with respect to this, this court has determined in the Snow Ingredients case that litigation activity cannot be the predicate for a civil RICO claim. This court surveyed an overwhelming consensus of case law supporting this and found that the only exception to this were cases in which there was bribery, witness tampering, obstruction of justice, some criminal element in the lawsuit itself or advancing the lawsuit itself. Here, there's no allegation of that. None of those have been pled. Here, it's the fact that the lawsuits were going forward or the specter of the lawsuits going forward is what they claim is lawful. And under this court's precedent, that cannot form the basis of a RICO claim. And finally, the last point is that the INRI MasterCard case, the case cited in the appellant's brief, shows that you cannot establish a RICO claim. You cannot show that the defendant has participated just by doing their normal business and by, in effect, advancing a RICO. All right. Mr. Ambo, you've reserved your rebuttal time. Thank you, Your Honor. All right. Mr. Klatsky. May it please the court. I'm Howard Klatsky. I'm appearing here today for the Appellee's Diamond Consortium and David Blank. Initially, my clients acknowledge that an attorney's representation of his client is, generally speaking, a protected activity. However, the actions of Mr. Hammervold and his firm, more specifically the claims that have been asserted against Mr. Hammervold and his firm, do not involve a protected activity. I believe that Justice Southwick has accurately summarized what the allegations actually are. Those are discussed at great length by the trial court in the order that is now at issue. I asked your friend on the other side about his best case to support, despite the distance in the allegations between actual litigation and the allegation itself. What's your best case that, under Texas law, it is correct to go forward? I know Judge Mazant made the distinction, but I'm not sure about the case law of how far this statute goes. I do think Mr. Hammervold is correct that one way that Texas may have had set up for this to be dealt with is to show a prima facie case and go to the second step and the third step. But we're not there yet. We're just looking at the first. So what's your best case that, even though judicial proceedings are at the core of the harm, it is proper to look a step back from that and it's the agreement, the agreement to bring such litigation? Well, Your Honor, I appreciate that question, and I'm going to answer it. I think one way to answer it is to look at the big picture. There's an irony here. Well, all you're saying, I mean, the question really was about what case law is there. But if you're telling me you've just got to look at the purpose of the statute, and there is no case law, that's fine. No, sir, there is some case law. I think the Serafine case, which I plan to address in a few moments, is much more applicable in this case than Walker v. Beaumont ISD. I would also refer this Court to the Canny Hanger case that was recently decided in Texas. The Hammervold parties are essentially suggesting that attorney immunity is absolute no matter what, and I think the case law clearly says otherwise. The point that I was going to make, though, the irony here, Your Honor, is that this scheme, if executed to perfection, would actually result in no litigation being filed. Again, if the money was paid by the jewelers who were being extorted, there would be nothing for Mr. Hammervold to do. I might collect his feet. Pardon me, Your Honor? He'd collect his feet. Agreed. What we have here, and what the allegations are, is that Mr. Hammervold and his firm are being sued for knowingly conspiring with others in an illegal scheme that was designed and intended to extort money from targeted jewelers. When we talk about the live complaint filed by my client, it sets forth detailed, specific facts that would allow a reasonable fact finder to conclude that both Hammervold and his firm knowingly participated in this illegal scheme well before any lawsuits were filed, well before any litigation was imminent. Now, these allegations far exceed the scope of any protected legal representation by Mr. Hammervold of his clients, who Mr. Hammervold acquired through the illegal scheme. Now, in the order denying the amended motion to dismiss, the court correctly noted that it is this scheme, not the judicial proceedings, that formed the basis of the conspiracy claim. The trial court found that my client pled sufficient facts to state a plausible claim for civil conspiracy and noted on page 9 of its order that it was Hammervold's willingness and availability to prosecute claims that was part of the overall scheme. Now, when we talk about the live complaint, my clients have specifically alleged that Hammervold, his firm, and his co-conspirators all engaged in illegal acts. This complaint details the scheme, how all of the parties put it together and effectively carried it out, and this is detailed throughout the pleading. Mr. Hammervold's role, his knowing participation in the scheme, how and why he was a necessary party to the conspiracy, and how these defendants collectively functioned together as a unit with a common purpose, i.e. extorting money from jewelers, is detailed throughout this complaint. And what I would emphasize is that these allegations, unlike the allegations made by plaintiffs in some of the case laws cited by Mr. Hammervold, are not conclusory. They are incredibly detailed. We talk at length about the litany of false, misleading, defamatory publications posted on the Internet, in social media, on flyers that were distributed not only in Dallas but in cities throughout the country that amount to extortion and constitute mail fraud, wire fraud, violations of the Travel Act, and violations of Tennessee state law. Have any criminal charges been filed? Not to my knowledge, Your Honor. What's the status of your case against Mr. Manokian? Your Honor, there was a confidential settlement agreement entered into that resulted in the entry of an agreed permanent injunction. So the claims against Mr. Manokian and his firm have been resolved. So does the confidentiality prevent you from saying whether money was paid? Whether money was paid as part of the settlement? Your Honor, I believe that it does. If you were to order me to answer your question, I would certainly do so. Okay. Was money paid? As I understand things, I'm not trying to be cute. The answer is yes and no. Under the terms of the agreement, however, my recollection of things, and I was one of a handful of lawyers involved, is that one of the law firms who was representing my client agreed to purchase certain Internet sites that Mr. Manokian had allegedly posted. Like the Facebook ads and all that? Yes, Your Honor. And that was the way it was ultimately resolved, to the best of my understanding. Now, these criminal acts were done with specific intent to generate fear so that my clients would agree to pay Mr. Hammervold's co-conspirators large sums of money for legal work that would not have been needed but for the scheme. Now, in 2015, the Supreme Court of Texas decided the N. Ray Lipsky case and held that the TCPA is not designed to dismiss meritorious lawsuits. This lawsuit is a meritorious one with a demonstrable injury, and the injury is detailed, for example, in paragraph numbers 85 through 87 of my client's live complaint. Is the end goal in the complaint more injunctive or declaratory or dollars and cents? The damages, Your Honor? Yes. My recollection is that injunctive relief was requested as well as damages. I believe all of that is set out in the complaint. Now, the conspiracy claim addresses the actions of Mr. Hammervold and his firm that they agreed to engage in outside of any pending or imminent judicial proceeding. And again, carried to perfection would have ensured no litigation. This does not equate to the right to petition, and a number of courts, as Mr. Hammervold acknowledged, including this circuit in Cuba v. Pilot, have established the two-prong or two-step inquiry. And I want to focus on prong one because I think it's really the key. Initially, the burden of proof is on Mr. Hammervold and his firm to show by a preponderance of evidence that my client's conspiracy claim arises from the exercise of his right to petition. If Hammervold and his firm meet this burden, the court must then determine if my clients can point to clear and specific evidence showing a prima facie case for each essential element. The Hammervold defendants, respectfully, did not meet their initial burden under step one and cannot given the detailed factual allegations asserted against them. Accordingly and respectfully, we submit that this court's inquiry properly ends after looking at stage one. However, if this panel finds that a step two analysis is required or appropriate in any way, we believe that the record includes clear and specific evidence that supports each essential element. Isn't it a fair statement on our review standard that regardless of what's in the record, there must be argument made in the district court to address the issue? That argument needs to be renewed up here, and otherwise you have waiver? Well, Your Honor, I understand that that's been the allegation. I respectfully disagree with the argument made by the opposing side. They have alleged waiver. What we did was when we filed our consolidated amended complaint, which is the— Let me just ask you, is there any argument in briefing in front of the district court judge as to the question of prima facie case? Did you make any argument here is how the prima facie case is supported by our evidence? Your Honor, my recollection is that that was referenced in the briefing materials filed with the trial court. I looked at the briefing materials. They may have been referenced, but I did not see any argument about here's the evidence that supports, here's how the prima facie case would be shown. And, Your Honor, you may be technically correct. What I'm recalling is that the live pleading, the consolidated amended complaint, not only was it incredibly detailed, but it referenced and referred to lengthy exhibits, over 600 pages of documents that were referenced in the responsive pleadings filed with the trial court. The evidence was there, but I respectfully submit that the trial court, Judge Mazant, made his determination based upon Mr. Hammervold's failure to satisfy prong one. And, again, I really think the inquiry stops there, but if the court doesn't want to do that and we want to look to the evidence, it is there. The relationship between the defendants, how they put the scheme together, how it was carried out both in Dallas and throughout the country, and details about the jewelers who were subjected to and damaged by the scheme were all provided. And I would also note that these exhibits, i.e. this evidence, was not objected to by Mr. Hammervold or his firm. Moreover, it wasn't even necessary, according to the Cuba v. Pilot case, because the evidentiary standard in this context is more like a pleading requirement than a traditional evidentiary summary judgment standard. As I understand Cuba, when a party like my client is responding to a motion to dismiss like this one, my clients are not required to provide evidence in a traditional sense if their pleadings are sufficiently clear. And I'm referring the court to the Cuba v. Pilot case, which cites to Serafine v. Blunt, which I'm going to be discussing in more detail in a few minutes. Respectfully, we believe that my client's live complaint fully satisfies this standard. Now, getting back to what Judge Southwick asked me earlier, a number of courts, including the Supreme Court of Texas in Caney v. Bird, have held that attorney immunity does not extend to fraudulent conduct done outside the scope of a lawyer's legal representation of his clients. Moreover, a number of courts have held that the Mannix case cited by Hammervold and other cases cited by Hammervold should not be read to immunize attorneys who are participants in fraudulent schemes. And we've cited all of that case law in our briefing. Now, Mr. Hammervold in his briefing argues that Walker v. Beaumont is directly on point. Respectfully, we believe that he is mistaken. Now, to the extent that Walker stands for the proposition that an attorney's representation of his clients falls within the right to petition, we would agree. But again, Mr. Hammervold and his firm are not being sued for engaging in any protected activity. They are being sued for agreeing to engage in an illegal scheme with others outside of the litigation process. Given this, we submit that the Serafine v. Blunt case is much more instructive than the Walker case. The claims in Serafine, which I'm not going to spend much time talking about, can really be broken down into two parts. There were some claims that the court said related to filings made by attorney Serafine, and those claims were precluded under the Act. But the court went on to say that there were other claims that addressed threats made by Serafine outside of the context of a lawsuit, and those were not subject to the Act. And that is much more similar to what we're dealing with here. In this case, Mr. Hammervold and the other defendants enabled threats to be made to extort bogus engagement agreements with the goal of avoiding litigation, not prosecuting it. Now, getting to the waiver issue, again, Hammervold argues we've waived the right to argue about prong two. I respectfully disagree for two reasons. Point one, we believe the evidence was presented to the trial court. Point two, as I read the briefing filed by Mr. Hammervold and his firm, their argument was based solely upon the affirmative defense of absolute privilege, not lack of evidence, which does not apply in this case because, again, Hammervold and his firm are not sued for engaging in protected activity. Lawyers are not free to participate in illegal extortion schemes with immunity simply because they are members of a state bar. Yet this is exactly what Hammervold and his firm are arguing before this panel. A bar card should not be a get-out-of-jail-free card. Now, the privilege asserted by Mr. Hammervold is an affirmative defense, which is not properly addressed by way of a dismissal motion unless the complaint filed by my clients clearly shows on its face that the privilege applies. And I refer the court to the Intelligender v. Soriano case that we've cited for that proposition. My client's live complaint does not show that the privilege applies. In fact, it demonstrates just the opposite. Now, turning to the RICO claim, we respectfully submit that this court does not have jurisdiction to address it at this time or, alternatively, that this court should not choose to exercise jurisdiction over the claim at this time. And the reason for that is simple. No rare and unique circumstances exist here other than the rare, unique, and egregious acts of Mr. Hammervold and his co-conspirators. Additionally, Mr. Hammervold and his firm have not demonstrated that the RICO claim is inextricably intertwined with his TCPA defense. Now, in the unlikely event that the panel disagrees and elects to exercise jurisdiction over that portion of the court's ruling, we submit that this court's de novo review would support an order affirming the trial court's ruling. My client's live complaint, which is to be construed in favor of my clients, where all well-pled facts are to be treated as true, demonstrates that the claim should not be dismissed. Dismissal is only appropriate if the complaint fails to plead enough facts to state a claim that is plausible on its face, meaning not a probability requirement, but asks for the possibility that the defendants acted unlawfully. And I refer the court to the Bell Atlantic v. Twombly case decided by the United States Supreme Court for that proposition. I submit that when this panel reviews my client's live complaint, it will be clear to the court that my clients have alleged far more than a possibility that the defendants have acted unlawfully. Do you want to say anything about the 28J? The Quintanilla case is the one that's being emphasized, not the MVS case. Did you late-file? I mean, you've accepted it. Yes, Your Honor. I'd be happy to briefly address those. Quintanilla, which I think was just cited a couple of days ago, is distinguishable for multiple reasons. First of all, there were no RICO claims or conspiracy claims asserted, as I recall. Second of all, the party in that case was able to meet the Step 1 or Prong 1 analysis under Cuba v. Pilant, and the TCPA applied. In this case, Mr. Hammervold and his firm have not met their burden under Step 1. As for Step 2 in the Quintanilla case, the party in that case did not, according to the court, present any evidence that would allow it to prevail. As I recall, there was a contract, some type of agreement between the parties, that the court found was clear and unambiguous, and the other party came to court and presented affidavit testimony and possibly some other documents, attempting to essentially rewrite or change the terms of the unambiguous agreement. The court said, no, the parole evidence rule won't permit that type of evidence, which essentially equated to no evidence. We don't have those facts here at all. In terms of the other case, the MVS case that was recently cited by Mr. Hammervold, the court in that case specifically stated that it was choosing to focus only on one TCPA right, and that was the right of free speech. That right is not implicated in our case. Additionally, the court found that the evidence that was submitted by the court was conclusory. Again, as I touched on at the beginning of my presentation, we believe that our allegations are not conclusory in any respect. They are incredibly detailed. I see that I'm about out of time, Your Honor. If you have any questions, I'll be happy to address them. Otherwise, I thank the panel for your time and consideration. We respectfully ask that the rulings of the trial court be affirmed. Thank you, Mr. Gladsky. Thank you, sir. Back to you, Mr. Hammervold, for rebuttal, if you will. I'd like to address the appellee's citation to the Serafine case. This was a case that was issued by the Texas Court of Appeals in 2013. This was just two years after this act came into existence and before there was much precedent on this issue. In that case, there was a majority decision, which is very brief and concise, and then there was an extended concurring opinion that has become a significant point of discussion in later cases. In the concurring opinion, the justice wrote separately to explain this concept of a mixed claim because the facts in that case involved harassment between two neighbors that ultimately was arising from tension about a property line dispute. And there were legal elements to the harassment and there were extra-legal elements to the harassment, including threats to third parties that were servicing the properties. And the concurring opinion reflected on the broad language of the statute and said that we need to have some type of judicial limit on the statute based on what we know about constitutional jurisprudence and based on what the legislature might want to be capturing here. And, in fact, the Court specifically said that if you were just to look at the ordinary meaning of relates to, it would, quote, denote some sort of connection, reference, or relationship, while in response to would denote some sort of answer or act in return.  Now, this approach has not been followed. The Supreme Court in the Exxon case did not endorse this approach. The Supreme Court said that you have to apply these ordinary terms even though they are wide open and massively expand the act. And to re-answer the initial question that was asked me, what is the most important case? The Cavan v. Abbott case. It was a case that was decided in July of 2017 and is based on the most recent pronouncement by the Supreme Court. And, in fact, this decision addresses Serafine and says that the rule that we're bound to apply now was foretold by the Serafine decision. We now have to apply this approach. Some commentators have suggested that the only real way to defend against the TCPA is during the Step 2 analysis that the appellees waive. The Cavan case is also important because it talks about the disjunctive and non-redundant is based on, related to, or is in response to, and says that when you look at the plain language of these terms, you have to, you can't limit them by the nature, directness, or the strength of connections on page 40 of the decision. And it concludes, it is hard to conceive of a legal action that is not based on, related to, or in response to at least one of the TCPA's three defined categories of protected activity so long as the complainant of conduct has some kernel of TCPA-defined communication within it. With respect to the plaintiff's intentional affliction of emotional distress claim, the claim was based on a broad campaign of harassment, a conspiracy to undermine a relationship between husband and wife, and there was an element of it that used litigation and used abusive process in order to intimidate third parties that got in their way. And the court said, well, based on this language, relates to, there's an element that relates to it, therefore we are bound to apply the act here. And that is the strongest case as to why the plaintiff satisfied their burden under step one. What if there had never... Those suits were actually filed, right? They were, Your Honor. On threats. Correct, Your Honor. Right, that makes it... Counsel, what if there never had been any clients, that this conspiracy could be proven, alleged conspiracy hypothetically was proven, but in fact the efforts by Mnuchin were successful and though a lawyer was part of the conspiracy, never brought any litigation? Would this statute apply? Well, Your Honor, there's a very empirical answer to that. At one point in time, there were no clients. At one point in time, I hadn't announced my representation of the clients, and I wasn't a defendant. I wasn't added to... Counsel, I'm asking you a hypothetical question. Would that be a proper litigation against you, against an attorney? One of the problems of the party being here as the actual attorney is it does become more personal. But let me just say an attorney agreed in the way that the plaintiff says no litigation was ever brought because the first player in the conspiracy was always successful. You get to answer my question no matter the time. But no litigation was ever brought. Is that defendant attorney who never had any clients but was standing by as part of the conspiracy unable to be sued because there was a judicial proceeding under the statute? Well, Your Honor, I understand there to be two elements of the question. I'll try to answer it the best I can. The first is without any of the specific protected activities, so acceptance of a client, pre-suit notice, suits, what's left? Is there an element that's not protected that's left? All that's left is the conclusory allegation that a lawyer agreed with something that someone else is doing. That's not sufficient to state a claim for a conspiracy. Just simply agreeing on something without doing anything or without advancing the conspiracy in any way, just simply abstractly agreeing to somebody else doing something is not a conspiracy. The second aspect is. You're talking about pleadings. You're talking about that's not an agreement that can be sued on. That's one thing to say that what is the evidence to support that the agreement was entered. Let's say that evidence existed. Is that if the conspiracy was shown but the lawyer never had to perform, is that lawyer exempt under this statute from being sued? I think now you're asking about the step three, whether the affirmative defense has been met under eternity of immunity, whether if there's no client, whether it implicates the lawyer's role. And if there is no client, if there is no action as an attorney, if there is just a separate conspiracy, and say, for example, that they had alleged instead of me accepting representation reflecting my conspiracy, that I had helped the other defendant with the advertising campaign or I had also called the plaintiff and urged him to retain the other defendant, those types of actions would likely not be included by eternity of immunity and would be a much tougher call as to whether they're included within the scope of the TCPA. Thank you. Thank you, Your Honor.  Thank you. Counsel both sides. The case will be submitted.